## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**FINUS A. STRICKLAND**                                                                  **PLAINTIFF**

**v.**                                            **4:07CV01228 BD**

**MICHAEL J. ASTRUE,**
**Commissioner, Social**
**Security Administration,**                                                    **DEFENDANT**

### MEMORANDUM AND ORDER

Plaintiff, Finus A. Strickland, has appealed the final decision of the Commissioner of the Social Security Administration to deny his claim for Disability Insurance benefits and Supplemental Security Income, based on disability.  Both parties have submitted appeal briefs and the case is ready for decision.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error.  *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); see also, 42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision.  *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months."   42 U.S.C. § 423(d)(1)(A).   A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. § 423(d)(3).

Plaintiff alleged that he was limited in his ability to work by high blood pressure, back problems, loss of memory, bad feet and wrists, and diabetes.  (Tr. 114)  The Commissioner found that he was not disabled within the meaning of the Social Security Act. The only issue before this Court is whether the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial record evidence.

After conducting an administrative hearing, the Administrative Law Judge[1] (ALJ) concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time through March 28, 2007, the date of her decision.  (Tr. 25)  On November 5, 2007, the Appeals Council received and considered additional evidence and then denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (Tr. 5-7)  Plaintiff then filed his complaint initiating this appeal.  (Docket #2)  After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

Plaintiff was 31 years old at the time of the hearing.  (Tr. 595)  He testified that he completed the tenth grade in school.[2]   *Id.*  He has past relevant work as a groundskeeper, certified nurse's assistant and production helper.  (Tr. 25)

---

[1] The Honorable Penny M. Smith.

[2] On two forms, he indicated that he completed the eleventh grade.  (Tr. 120, 146)  It makes little difference; either would qualify as a "limited" education.  20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3) (2006).

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i) (2006). If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. *Id.* at §§ 404.1520(b); 416.920(b).

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. *Id.* at §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If not, benefits are denied. *Id.* A "severe" impairment significantly limits a claimant's ability to perform basic work activities. *Id.* at §§ 404.1520(c); 416.920(c).

Step 3 involves a determination of whether the severe impairment(s) meets or equals a listed impairment. *Id.*, §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If so, and the duration requirement is met, benefits are awarded. *Id.*

If the claimant does not meet or equal a Listing, then a residual functional capacity assessment is made. *Id.*, §§ 404.1520(a)(4); 416.920(a)(4). This residual functional capacity assessment is utilized at Steps 4 and 5. *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity to perform past relevant work. *Id.*, §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If so, benefits are denied; if not, benefits are awarded. *Id.*

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 17) She found that Plaintiff had "severe" impairments, including

diabetes mellitus, kidney stones, obesity, and an adjustment disorder,[3] but that he did not have an impairment or combination of impairments that met or equaled a Listing. (Tr. 17-18) She judged that Plaintiff's allegations regarding his limitations were not totally credible. (Tr. 19)

The ALJ found that Plaintiff retained the residual functional capacity for medium work with additional restrictions. The limits included an inability to climb scaffolds, ladders and ropes; an inability to be directly involved with the public; a requirement that the tasks performed not be complex, require little judgment and simple reading skills, and where supervision be direct, specific, and concrete. (Tr. 18) Based on the testimony of a vocational expert, she found that Plaintiff was able to perform his past relevant work as a groundskeeper as he had performed it. (Tr. 24-25) Consequently, the ALJ concluded that Plaintiff was not disabled. *Id.*

Plaintiff argues that the ALJ erred by failing to evaluate his depression according to the psychiatric review technique. (Br. 21-23)

> At the administrative law judge hearing and Appeals Council levels, the written decision issued by the administrative law judge or Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2); 416.920a(e)(2) (2001) (2006).

The referenced functional areas are activities of daily living; social functioning; concentration, persistence, or pace and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3) (2006).

---

[3] She found that Plaintiff's hypertension and hyperlipidemia were not "severe." (Tr. 17)

As noted, the ALJ found that Plaintiff had an adjustment disorder, which she found to be a "severe" impairment.  (Tr. 17)  In the opinion, she wrote:

> The claimant's mental impairments have not caused a substantial loss in his ability to respond appropriately to supervision, coworkers, and usual work situations (Social Security Ruling 85-15).  On August 29, 2005, the claimant visited the Counseling Associates Clinic (Exhibit 28F, page 6).  The claimant's counselor reported that the claimant said: "my lawyer told me I needed to come in" (Exhibit 28F, page 6).  The claimant had a diagnosis of an adjustment disorder with depressed mood and a borderline personality disorder.  Thereafter, the claimant had only one follow up appointment for counseling.  The claimant did not attend a scheduled appointment for October 24, 2005 (Exhibit 31F, page 2).

> Thus, the record shows that the claimant has only sought mental health treatment at the suggestion of his lawyer.  He is not receiving regular treatment for depression.  If the claimant truly had disabling mental impairments, he likely would have sought treatment on his own.

(Tr. 23-24)

Although she did not utilize the psychiatric review technique, she did comment on Plaintiff's activities of daily living.  Under the circumstances presented in this case, the failure to utilize the psychiatric review technique was harmless error.  See *Hardy v. Chater*, 64 F.3d 405, 408 (8th Cir. 1995)(on record before ALJ, completion of [then required] Psychiatric Review Technique Form was little more than formality); *Montgomery v. Shalala*, 30 F.3d 98, 100-01 (8th Cir. 1994)(suggesting that failure to complete Psychiatric Review Technique Form could, in certain cases, be harmless).

Next, Plaintiff argues that the ALJ erred at Step 3 of the sequential evaluation process by not discussing whether he met Listing 12.04 and by not finding that he met that Listing. (Br. 23-25)

> Although it is preferable that ALJs address a specific listing, failure to do so is not reversible error if the record supports the overall conclusion, as it does in this case. See *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir.2001)(holding a failure to explain why the claimant did not meet the listing for rheumatoid arthritis was not an error); *Briggs v. Callahan*, 139 F.3d 606, 609 (8th Cir.1998) (stating that "although the ALJ did not specifically discuss [the]

5

condition in the context of listing 112.05(D)," the record supported the conclusion).

*Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003).

The Listing in question reads as follows:

12.04 *Affective Disorders:*  Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A.  Medically documented persistence, either continuous or intermittent, of one of the following:

1.  Depressive syndrome characterized by at least four of the following:
a.  Anhedonia or pervasive loss of interest in almost all activities; or
b.  Appetite disturbance with change in weight; or
c.  Sleep disturbance; or
d.  Psychomotor agitation or retardation; or
e.  Decreased energy; or
f.  Feelings of guilt or worthlessness; or
g.  Difficulty concentrating or thinking; or
h.  Thoughts of suicide; or
i.  Hallucinations, delusions or paranoid thinking; or
2.  Manic syndrome characterized by at least three of the following:
a.  Hyperactivity; or
b.  Pressure of speech; or
c.  Flight of ideas; or
d.  Inflated self-esteem; or
e.  Decreased need for sleep; or
f.  Easy distractibility; or
g.  Involvement in activities that have a high probability of painful
consequences which are not recognized; or
h.  Hallucinations, delusions or paranoid thinking;
or
3.  Bipolar syndrome with a history of episodic periods manifested by
the full symptomatic picture of both manic and depressive
syndromes (and currently characterized by either or both
syndromes);

AND

B.  Resulting in at least two of the following:
1.  Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3.  Marked difficulties in maintaining concentration, persistence, or
pace; or
4.  Repeated episodes of decompensation, each of extended duration;

OR
C.  Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1.  Repeated episodes of decompensation, each of extended duration; or

2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3.  Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpart P, App. 1 (2006).

Plaintiff contends that his GAF of 40 is below what is necessary to meet the functional limitations of the "B" criteria of the Listing.  (Br. 25)  That argument must fail. GAF does not have a direct correlation to the severity requirements in mental disorders listings.  65 Fed.Reg. 50746, 50764-65 (2000).  Furthermore, the GAF was assigned by Mark Coffman, L.P.C.[4]  (Tr. 468, Br. 17)  A licensed professional counselor is not an "acceptable medical source" upon which the ALJ may rely to establish a medically determinable impairment.  20 C.F.R. §§ 404.1513(a), 416.913(a) (2006).

He also argues that the "A" criteria are met by his diagnoses and testimony.  (Br. 25) A diagnosis alone does not establish that a Listing has been met.  *Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir. 2004); 20 C.F.R. §§ 404.1525(d); 416.925(d) (2006).   (It appears that the diagnoses were also provided by Counselor Coffman.)  Plaintiff may not rely on his testimony, either, since the question of whether a plaintiff meets a Listed impairment is strictly a medical determination.  *Cockerham v. Sullivan*, 895 F.2d 492, 496 (8th Cir. 1990).

---

[4]  Licensed Professional Counselor.   Neal M. Davis, <u>Medical Abbreviations: 15,000 Conveniences at the Expense of Communications and Safety</u>, 188 (10th ed. 2001).

Plaintiff has the burden of showing that he met a Listing.  *Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998).  He failed to meet that burden.

Finally, Plaintiff contends that the ALJ erred in his physical residual functional capacity determination.  (Br. 25-30).  The ALJ must determine the claimant's residual functional capacity based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations.  *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).  Before determining a claimant's residual functional capacity, the ALJ first must evaluate the claimant's credibility.  *Pearsall*, 274  F.3d at 1218.

Plaintiff faults the ALJ for noting that one treating physician had made a record of Plaintiff's drug-seeking behavior, contending that there was objective evidence to back up his complaints of pain.  (Br. 27)  This was not an isolated instance, however.  As far back as 1998, there is a doctor's notation of a history of narcotics abuse.  (Tr. 291)  Plaintiff had been seen at the emergency room the night before, and was to have seen his urologist, but returned to the emergency room again.  The notation indicates that he never kept urology appointments.  *Id.*  The doctor noted "avoid further narcotics <u>here</u>."  *Id.*  (Emphasis in original.)

In 2002, another doctor observed, "Patient complains of pain out of proportion to examination."  (Tr. 334)  "Patient always wants more pain medicine and this has become an issue with him."  (Tr. 335)

In February of 2002, his treating urologist noted:

SUBJECTIVE:  Mr. Strickland comes in today complaining of pain again. Mr. Strickland, his wife, and I discussed his pain at length.  This has been an ongoing issue with Mr. Strickland and it is hard to diagnose exactly what is going on.  The patient has had several CT scans, ureteroscopies and one ESWL procedure and he says that this has not made any change in his pain.

There seems to be no anatomical abnormality other than his stone disease. The patient has had several stents, removals of stones, removal of stents, and he says he has constant, continuing left flank pain that shoots down toward his groin with some mild nausea and vomiting from time to time.  With the stent in, he also has a little bit of urgency and frequency.

I have given him various pain medicines.  I personally know that his ureter is as clear as can be up to the UPJ.  We shot a retrograde and it showed a totally clear UPJ and renal pelvis.  We put in a stent. He says the pain is the same. This is a troublesome case.

After discussing this patient's case at length, I gave him several boxes of samples of Celebrex, Roxicet, and antibiotics.  This is a very tough case and I do not have a really good idea of what is going on as far as his chronic pain. Most patients have improvement after removal of the stone, but he claims that even after all of his ureteroscopies, stone removals, stents, ESWLs, he has had no change in his pain, just chronic constant pain.  I have decided we need to determine if his left kidney is blocked off.  He has a stent in and it should not be.  I have ordered a Lasix renal scan to evaluate for left obstruction.  If it is not, I think I am going to send him to a chronic pain doctor.  I have told him this and they understand that.

(Tr. 343)

The following day, he wrote:

I saw Mr. Strickland today.  He had very questionable drug seeking behavior. I am getting worried about him.  Apparently he has gone to the Russellville ER complaining tearfully of pain and wanting IV narcotics.  I talked to the emergency room doctor there and he reports that Mr. Strickland has shown up there many times for multiple reasons, always wanting large narcotics for his pain.  . . . .

(Tr. 342)

Plaintiff was terminated as a patient by the doctors in the urology clinic.  (Tr. 341) Under the circumstances, the ALJ properly discussed Plaintiff's behavior and his doctors' reaction to it.

Plaintiff argues that the ALJ impermissibly relied on opinions of state agency physicians who did not examine him.  (Br. 30)  The ALJ noted the findings of the two state agency physicians, and remarked, "These opinions can only serve to add to the conclusions reached above."  (Tr. 24)  The ALJ was required to consider their findings.

> Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists.  However, State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges <u>must</u> consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled.  . . . .

20 C.F.R. §§ 404.1527(f)(2)(i); 416.927(f)(2)(i) (2006) (emphasis added); accord, Social Security Ruling 96-6p.

There was a lack of restrictions on Plaintiff's activities by his physicians.  See *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (none of claimant's treating physicians offered opinion she was so impaired or disabled she could not work any job); *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003)(no functional restrictions on activities is inconsistent with claim of disability); *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003)(ALJ may consider absence of such opinion by treating physicians); *Baldwin v. Barnhart*, 349 F.3d 549, 557 (8th Cir. 2003)(none of claimant's independent physicians restricted or limited his activities); *Tennant v. Apfel*, 224 F.3d 869, 871 (8th Cir. 2000) (absence of physician-ordered restrictions).  To the contrary, at least one physician urged Plaintiff to be as active as possible.  (Tr. 556)

Plaintiff's residual functional capacity argument seeks to place the burden of proof on the Commissioner.  It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's residual functional capacity.  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Masterson v. Barnhart*, 383 F.3d 731, 737 (8th Cir. 2004); *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003);  *Pearsall*, 274 F.3d at 1217; *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. *E.g.*, *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing and the medical and other evidence. There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; see also *Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

Accordingly, the Court hereby affirms the final determination of the Commissioner and dismisses Plaintiff's complaint with prejudice.

IT IS SO ORDERED, this 12th day of February, 2009.

_____
UNITED STATES MAGISTRATE JUDGE